UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
DAVID E. WILKS and LOIS WILKS,

                                    Plaintiffs,

                -against-                                                **REPORT AND**
                                                                         **RECOMMENDATION**
WELLS FARGO BANK, N.A. and WOODS                                         23 CV 2768 (HG) (CLP)
OVIATT GILMAN, LLP,

                                    Defendants.
--------------------------------------------------------X
**POLLAK**, United States Magistrate Judge:

Plaintiffs David E. Wilks and Lois Wilks (collectively, "plaintiffs" or the "Wilks"),

proceeding *pro se*, commenced this action against defendants Wells Fargo Bank, N.A. ("Wells

Fargo" or the "Bank"), and Woods Oviatt Gilman, LLP ("Woods Oviatt" or the "Firm" and,

collectively with Wells Fargo, "defendants"). (See Compl.[1]). Two motions are currently

pending before this Court on referral from the Honorable Hector Gonzalez, United States District

Judge: Wells Fargo's motion to dismiss the Complaint pursuant to Rules 12(b)(1), (5), and (6) of

the Federal Rules of Civil Procedure (the "Bank's Motion") (ECF No. 16), and Woods Oviatt's

motion to dismiss the Complaint pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil

Procedure (the "Firm's Motion") (ECF No. 19). Having considered the motion papers, the

allegations in the Complaint, and plaintiffs' objections to the motions, the Court concludes that

(1) the district court lacks subject matter jurisdiction; and (2) Younger abstention further

prevents the district court from hearing plaintiffs' claims for injunctive relief. The Court

therefore respectfully recommends that the district court GRANT both defendants' motions and

dismiss the Complaint in its entirety.

---

[1] Citations to "Compl." refer to plaintiffs' "Verified Counterclaim Civil Complaint Pursuant to 42 U.S.C. §
1983, *et seq*.," filed April 12, 2023. (ECF No. 1).

FACTUAL BACKGROUND

A.     The Mortgages

On December 28, 2005, the plaintiffs Lois and David E. Wilks executed a Promissory Note in the amount of $399,600.00, plus interest, to Wells Fargo (the "2005 Loan").  (Grigg Decl.[2] ¶ 5; see also Grigg Decl. Ex. A (ECF No. 19-2)).  The 2005 Loan was secured by a mortgage on real property located at 265 East 37th Street, a/k/a 365 East 37th Street, Brooklyn, N.Y. 11203 (the "Premises"), which was dated December 28, 2005, and recorded in the Office of the City Register on January 25, 2006, at CRFN 2006000046845 (the "2005 Mortgage").  (Grigg Decl. ¶ 5).  The 2005 Mortgage was subsequently assigned by an Assignment of Mortgage executed on August 5, 2013, and recorded in the Office of the City Register on September 16, 2013, at CRFN 2013000379327.  (Id.)

Thereafter, plaintiffs executed and delivered a second Promissory Note to Contour Mortgage Corporation ("Contour"), dated August 16, 2013, for the sum of $94,374.94, plus interest.  (Id. ¶ 6).  As security for the second Promissory Note, plaintiffs made and delivered a mortgage bearing the same date to Mortgage Electronic Registration Systems, Inc., as nominee for Contour (the "2013 Mortgage").  (Id.)  The 2013 Mortgage was recorded in the Office of the City Register on September 16, 2013, at CRFN 22013000379328.  (Id.)  The two mortgages were consolidated in CRFN 2006000046845 by a Consolidation, Extension and Modification Agreement to form a single lien in the amount of $449,375.00 (the "2013 Consolidated Mortgage").  (Id.)  The 2013 Consolidated Mortgage was assigned on three occasions from December 18, 2015, to January 22, 2016, and was recorded in the Office of the City Register

---

[2] Citations to the "Grigg Declaration" refer to the Declaration of Natalie A. Grigg, Esq., a partner with Woods Oviatt, filed in support of the Firm's Motion and dated July 10, 2023.  (ECF No. 19-1).

under CRFNs 2013000379329, 2016000139310, and 2016000139313.  (Id.; see also Grigg Decl. Ex. B (ECF No. 19-3))

On January 23, 2016, plaintiff Lois Wilks executed a third Promissory Note to Intercontinental Capital Group, Inc., for the sum of $25,292.50 plus interest, secured by a mortgage on the Premises and recorded in the City Register in CRFN 2016000139311 (the "2016 Mortgage").[3] (Grigg Decl. ¶ 7).  On the same date, Lois Wilks executed a Consolidated Promissory Note to Intercontinental Capital Group, Inc. for the sum of $457,111.00 plus interest, which was secured by a consolidated mortgage on the Premises comprised of the 2013 Consolidated Mortgage and the 2016 Mortgage, and forming a single lien in the same amount (the "2016 Consolidated Mortgage").  (Id. ¶ 8; see also St. Ct. Compl.[4] ¶¶ 4–5).  The 2016 Consolidated Mortgage was recorded in the Office of the City Register at CRFN 2016000139312,[5] and was subsequently assigned and recorded under CRFN 2018000090991 in March 2018.  (Grigg Decl. ¶ 8; see also Grigg Decl. Ex. C (ECF No. 19-4)).

On March 13, 2020, plaintiffs executed a Loan Modification Agreement to Wells Fargo, reducing the principal balance of the debt under the 2016 Consolidated Mortgage to $323,770.67 the "Modification Agreement").  (Grigg Decl. ¶ 9; see also Grigg Decl. Ex. D (ECF No. 19-5)).  The Modification Agreement was recorded in the Office of the City Register at CRFN 2020000175041.  (Grigg Decl. ¶ 9).

---

[3] The Court notes that the Grigg Declaration states the mortgage securing the $25,292.50 Promissory Note was recorded in the Office of the City Register on "September 16, 2013."  (Id.)  This appears to be a typographical error since the $25,292.50 Promissory Note was not executed until January 23, 2016.

[4] Citations to the "State Court Complaint" or "St. Ct. Compl." refer to the complaint filed by Wells Fargo in the State Court Action.  (ECF No. 17-1).

[5] The Court notes that the Grigg Declaration states the 2016 Consolidated Mortgage securing the Consolidated Promissory Note was recorded in the Office of the City Register on "September 16, 2013."  (Grigg Decl. ¶ 8).  This appears to be another typographical error given that the Consolidated Promissory Note was not executed until January 23, 2016.

B.     The State Court Foreclosure Action

On February 21, 2023, defendant Wells Fargo commenced a foreclosure action against plaintiffs in New York State Supreme Court, Kings County—Wells Fargo Bank N.A. v. Lois Wilks, David Wilks, et al., Index No. 505558/2023 (the "State Court Action")—seeking to foreclose on the consolidated mortgage held on the Premises.  Wells Fargo alleges in the State Court Action that, as of February 21, 2023, Wells Fargo was the owner and holder of the subject note and mortgage or had been delegated the authority to institute a mortgage foreclosure action by the owner and holder thereof.  (St. Ct. Compl. ¶ 11).  Wells Fargo further alleges that plaintiffs failed to pay the installment payment due on April 1, 2021, and all subsequent payments, and hence were in default.  (Id. ¶ 8).  As of the date of the filing of the State Court Complaint, the Wilks owed a principal balance of $317,960.90, together with accrued interest from March 1, 2021, at the rate of 3.375%, as well as late charges, monies advanced for taxes, assessments, insurance, inspection, maintenance and preservation of the Premises, along with the expenses of sale and attorney's fees.  (Id. ¶ 9).

All defendants in the State Court Action were served with the Summons and Complaint on or about March 7, 2023 (Bank's Mem.[6] at 2), and Lois and David Wilks appeared pro se, filing a Notice of Appearance on April 10, 2023 (Grigg Decl. ¶¶ 12, 13; see also Grigg Decl. Exs. F, G (ECF Nos. 19-7, 19-8)).  The Secretary of Housing and Urban Development, which holds a subordinate mortgage on the Premises in the amount of $128,979.37, filed a Notice of Appearance on April 13, 2023.  (Grigg Decl. ¶ 14).  The Bank asserts that the Wilks have not responded to the State Court Complaint.  (Bank's Mem. at 2).  The State Court Action remains pending.  (See id. at 2–3; Grigg Decl. ¶ 15).

---

[6] Citations to "Bank's Mem." refer to Wells Fargo's Memorandum of Law filed in support of the Bank's Motion on July 7, 2023.  (ECF No. 18).

C.    <u>This Action</u>

Plaintiffs commenced this action against Wells Fargo and Woods Oviatt on April 12, 2023.  They complain that the "real Party-in-Interest" for the mortgage in the State Court Action is not Wells Fargo, but the Government National Mortgage Association ("GinnieMae"). (Compl. ¶ 15).  Plaintiffs assert that Wells Fargo therefore had no right to commence a state foreclosure action against the plaintiffs, and that Wells Fargo had a duty to disclose the "fact" that GinnieMae was the real party in interest.  (<u>Id.</u> ¶¶ 17–21, 25–27, 29–31).  Plaintiffs further assert that Wells Fargo was required to provide proof establishing the Bank as the party in interest prior to filing their foreclosure action.  (<u>Id.</u> ¶¶ 22–24).  According to plaintiffs, Wells Fargo's supposed misrepresentation concerning the party in interest for the mortgage constitutes an "affirmative defense" to the Bank's foreclosure action.  (<u>Id.</u> ¶ 28).

With respect to Woods Oviatt, plaintiffs appear to claim that the Firm, in its capacity as Wells Fargo's counsel in the State Court Action, assisted Wells Fargo in carrying out the alleged misrepresentations noted above.  (<u>Id.</u> ¶¶ 39–41).  In other words, plaintiffs assert that Woods Oviatt was complicit in Wells Fargo's attempt to enforce a claim against the Premises when they knew that Wells Fargo was not the real party in interest and had no standing to bring the foreclosure action.  (<u>See</u> Pls.' Obj.[7] at 2–3).

Plaintiffs' Complaint contains five causes of action: (1) fraud upon the Court (Compl. ¶¶ 39–41); (2) violations of Rule 17(a) of the Fair Debt Collections Practices Act ("FDCPA") (<u>id.</u> ¶¶ 42–46); (3) violations of 42 U.S.C. §§ 1983, 1985, and 1986 (<u>id.</u> ¶¶ 47–49); (4) unfair business practices and fraud, in violation of 18 U.S.C. §§ 1337, 1341 (<u>id.</u> ¶¶ 50–54); and (5) violations of plaintiffs' Fifth and Fourteenth Amendment rights (<u>id.</u> ¶¶ 55–58).

---

[7] Citations to "Pls.' Obj." refer to Plaintiffs' Objection to Defendants' Motions to Dismiss, filed on July 17, 2023.  (ECF No. 21).

Plaintiffs seek an Order vacating, setting aside, or voiding the judgment of foreclosure on the Premises issued by the "Nassau County Supreme Court"[8] and awarding free and clear title to the Premises, along with a mortgage release from the real party in interest, and damages in the amount of $469,000, representing the value of plaintiffs' property interest involved in an allegedly fraudulent foreclosure proceeding brought by defendants. (Id. at p. 18–19). Plaintiffs also seek an additional $5,000,000 in damages based upon the five alleged deprivations of plaintiffs' constitutional rights. (Id.)

<u>PROCEDURAL HISTORY</u>

On July 7, 2023, Wells Fargo filed a motion seeking an Order dismissing the Complaint, pursuant to Rules 12(b)(1), (5), and (6) of the Federal Rules of Civil Procedure on abstention and other grounds. (See Bank's Mem. at 1). On July 11, 2023, Woods Oviatt filed a motion to dismiss under Rules 12(b)(1) and (6) for lack of subject matter jurisdiction and failure to state a claim for relief. (Firm's Mem.[9] at 1).

On July 17, 2023, plaintiffs filed their "Objection to Defendant's Motion to Dismiss," reiterating a number of the factual allegations in the Complaint and arguing that, in light of those facts, defendants' motions should be denied. (See Pls.' Obj.). On that same date, plaintiffs filed a so-called "Motion in Limine to Claim and Exercise Constitutionally Secured Rights and Require the Presiding Judge to Rule Upon this Motion in Compliance with His/Her Oath and Require All Public Officers of This Court to Uphold Said Rights and Their Oaths Pursuant to 28 U.S.C. 1361." (ECF No. 22). In this filing, plaintiffs requested, *inter alia*, a "pre-trial hearing

---

[8] Plaintiffs' reference to the Nassau County Supreme Court appears to be an error, as the State Court Action was commenced in Kings County. In any event, it is unclear whether the state court has actually entered a judgment of foreclosure on the property. (See e.g., Bank's Mem. at 2–3; Grigg Decl. ¶ 15).

[9] Citations to "Firm's Mem." refer to Defendant Woods Oviatt's Memorandum of Law filed in support of the Firm's Motion on July 11, 2023. (ECF No. 20).

to settle and confirm the Court's duty to uphold the Organic laws of the United States. . . ." (Id. at 3).

On July 18, 2023, the district court denied plaintiffs' request for a hearing and warned plaintiffs that they "may not defeat a meritorious motion to dismiss merely by asserting that the factual allegations in their complaint are true." (ECF No. 23 at 1–2).  The court gave plaintiffs the opportunity to submit any further papers in opposition to defendants' motion by August 30, 2023.  (Id.)  On August 11, 2023, plaintiffs filed objections to the district court's order,  focused only on the district court's denial of a hearing to confirm his oaths.  (ECF No. 24).  That same day, plaintiffs also filed a "Demand for Findings of Fact and Conclusions of Law Based in the Authority of the Original Organic Constitution of 1787, as Amended in 1791, to Disqualify the Unconstitutional Actions Committed by Hector Gonzalez Acting as Judge During the Denial of Plaintiff's Motion in Limine."  (ECF No. 25).  At no point, however, did plaintiffs file subsequent briefing addressing the legal issues raised by defendants' motions to dismiss.[10]  The Bank filed a reply in support of its Motion on September 18, 2023.  (ECF No. 26).

## SUBJECT MATTER JURISDICTION

Both defendants seek to dismiss plaintiffs' claims under Rule 12(b)(1) of the Federal Rules of Civil Procedure on the ground that the district court lacks subject matter jurisdiction thereover.  Specifically, Wells Fargo argues that under the doctrine set forth in Younger v. Harris, 401 U.S. 37, 43–45 (1971),[11] the district court should abstain from exercising jurisdiction

---

[10] Plaintiffs' failure to meaningfully "oppose the defendants' motion[s] to dismiss 'does not, by itself, require the dismissal of [their] claims.'" Amissah v. Wells Fargo, No. 19 CV 4624, 2020 WL 868599, at *1 n.1 (E.D.N.Y. Feb. 20, 2020) (quoting Leach v. City of New York, No. 12 CV 2141, 2013 WL 1683668, at *2 (S.D.N.Y. Apr. 17, 2013)).  "The sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." Id. (quoting McCall v. Pataki, 232 F.3d 321, 322–23 (2d Cir. 2000)).

[11] Unless noted, caselaw quotations in this order accept all alterations and omit internal quotation marks, citations, and footnotes.

over plaintiffs' claims.  (Bank's Mem. at 2–4).  Woods Oviatt does not join in the Bank's

abstention argument and instead maintains that none of the statutory bases for jurisdiction apply

here.  (Firm's Mem. at 3–7).  For the reasons set forth below, the Court concludes that (1)

plaintiffs have not established subject matter jurisdiction, and (2) in any event, <u>Younger</u>

abstention applies to the extent plaintiffs seek injunctive relief.

I.    <u>Legal Standard</u>

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)

when the district court lacks the statutory or constitutional power to adjudicate it."  <u>Makarova v.</u>

<u>United States</u>, 201 F.3d 110, 113 (2d Cir. 2000); <u>see also</u> <u>Rivera v. Ndola Pharm. Corp.</u>, 497 F.

Supp. 2d 381, 386–86 (E.D.N.Y. 2007).  When considering a motion to dismiss under Rule

12(b)(1) for lack of subject matter jurisdiction, the court must "accept as true all material factual

allegations in the complaint."  <u>Shipping Fin. Servs. Corp. v. Drakos</u>, 140 F.3d 129, 131 (2d Cir.

1998); <u>see also</u> <u>Rivera v. Ndola Pharm. Corp.</u>, 497 F. Supp. 2d at 387; <u>Country Rock Cafe, Inc.</u>

<u>v. Truck Ins. Exch.</u>, 417 F. Supp. 2d 399, 402 (S.D.N.Y.  2006).  While the court will "draw all

reasonable inferences in favor of plaintiff," <u>Rivera v. Ndola Pharm. Corp.</u>, 497 F. Supp. 2d at

387 (quoting <u>Natural Res. Def. Council v. Johnson</u>, 461 F.3d 164, 171 (2d Cir. 2006)), the

plaintiff bears the burden of proving by a preponderance of the evidence that subject matter

jurisdiction exists.  <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992); <u>see also</u> <u>Malik v.</u>

<u>Meissner</u>, 82 F.3d 560, 562 (2d Cir. 1996).  Moreover, a court assessing a motion to dismiss

under Rule 12(b)(1) must "give the plaintiff's factual allegations closer scrutiny" than it would in

the context of a motion to dismiss pursuant to Rule 12(b)(6), "[b]ecause subject-matter

jurisdiction focuses on the court's power to hear the claim."  <u>Physicians Comm. for Responsible</u>

<u>Med. v. U.S. Env. Prot. Agency</u>, 451 F. Supp. 2d 223, 228 (D.D.C. 2006) (citing <u>Macharia v.</u>

<u>United States</u>, 334 F.3d 61, 64, 69 (D.C. Cir. 2003)).

Where, as here, the plaintiffs are proceeding *pro se*, plaintiffs' submissions "must be construed liberally and interpreted to raise the strongest arguments that they suggest." McDonald v. Esposito, No. 20 CV 828, 2021 WL 1062259, at *2 (E.D.N.Y. Mar. 18, 2021) (quoting Meadows v. United Servs., Inc., 963 F.3d 240, 243 (2d Cir. 2020)).  Still, *pro se* plaintiffs must satisfy the basic pleading requirements, including with respect to jurisdiction. See Amissah v. Wells Fargo, 2020 WL 868599, at *2 (stating that even in the context of a *pro se* plaintiff, "an action will survive only if the law recognizes the claims, and if the complaint pleads enough facts to state a claim to relief that is plausible on its face").

II.    Analysis

A.    Statutory Bases of Jurisdiction

The Complaint sets forth several bases for subject matter jurisdiction, all of which are deficient according to the Firm.  (See Compl. ¶¶ 2–3, 6, 8; Firm's Mem. at 3).  The Court addresses each in turn and ultimately agrees that plaintiffs have not established jurisdiction under any of the available means for doing so.

1.    Diversity Jurisdiction

First, plaintiffs contend that the district court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.  (Compl. ¶ 3).  Subject matter jurisdiction premised on § 1332 "requires complete diversity, *i.e.* all plaintiffs must be citizens of states diverse from those of all defendants." Pennsylvania Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co., 772 F.3d 111, 117–18 (2d Cir. 2014) (quoting Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 553 (2005)), as amended (Nov. 12, 2014).  For purposes of assessing diversity, a limited liability company or partnership is a citizen of each state of which its members or limited and general partners are citizens.  See Bayerische Landesbank v. Aladdin Capital Mgmt. LLC, 692 F.3d 42, 49 (2d Cir. 2012).  The party asserting jurisdiction bears the burden of proof, including with respect to the

9

question of complete diversity. Pennsylvania Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co., 772 F.3d at 118 (citing DiTolla v. Doral Dental IPA of New York, 469 F.3d 271, 275 (2d Cir. 2006)). Woods Oviatt argues that plaintiffs have not satisfied the complete diversity requirement. (Firm's Mem. at 3–4).

Plaintiffs are domiciled in New York. (Compl. ¶ 10). Woods Oviatt is a limited liability partnership organized under New York law and with a principal place of business in Rochester, New York. (Firm's Mem. at 4; see also Compl. ¶ 12). The Firm has at least one partner that is a citizen of New York. (Firm's Mem. at 4–5 (citing Grigg Decl. ¶ 4)). Thus, like plaintiffs, Woods Oviatt is a citizen of New York for purposes of assessing diversity jurisdiction. Irrespective of whether plaintiffs are diverse from Wells Fargo—which plaintiffs assert is domiciled in California (see Compl. ¶ 11)—the lack of diversity vis-à-vis Woods Oviatt destroys complete diversity, and thus prevents the district court from exercising jurisdiction under 28 U.S.C. § 1332. See Pennsylvania Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co., 772 F.3d at 117–18; Morgan v. Worldview Ent. Holdings Inc., 611 B.R. 157, 159 n.4 (S.D.N.Y. 2019) (noting lack of complete diversity between third-party plaintiff, an LLC, and third-party defendant, an LLP, because one member of each was a citizen of New York); Weiss Acquisition, LLC v. Patel, No. 12 CV 1819, 2013 WL 45885, at *5 (D. Conn. Jan. 3, 2013) (stating that "[u]nder the governing law, the requisite complete diversity would be lacking if *any one member* of the Plaintiff LLC, and *any one member* of either Defendant LLC, are citizens of the same state" (emphasis added)); Media Grp. v. Arent Fox Kitner Plotkin & Kahn, PPLC, No. 03 CV 1017, 2004 WL 162900 (D. Conn. Jan. 23, 2004) (finding that complete diversity was lacking between plaintiffs and defendant, a large LLC, based on the citizenship of two of the LLC's members).

Moreover, it is well settled that "[i]n determining the existence of federal diversity jurisdiction, the court applies a time-of-filing rule that measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing . . . ." Finnegan v. Long Island Power Auth., 409 F. Supp. 3d 91, 95–96 (E.D.N.Y. 2019) (quoting Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 569–70, 124 S.Ct. 1920, 158 L.Ed.2d 866 (2004)). Thus, the court could not dismiss Woods Oviatt from the case and exercise diversity jurisdiction solely with respect to plaintiffs' claims against Wells Fargo; diversity jurisdiction would still be lacking because jurisdiction is determined as of the time the Complaint containing allegations against Woods Oviatt was initially filed.[12]

2.    Federal Question Jurisdiction

Second, plaintiffs assert that the district court has jurisdiction over their claims under 28 U.S.C. § 1331 (see Compl. ¶ 2), which provides federal district courts with "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." In practical terms, Section 1331 creates jurisdiction where "federal law creates the cause of action or . . . the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Perpetual Sec., Inc. v. Tang, 290 F.3d 132, 137 (2d Cir. 2002). In the latter case, "the federal issue [must be] (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by

---

[12] Courts have previously flexed the time-of-filing rule to, for example, ignore jurisdictional defects existing on the face of the complaint and exercise diversity jurisdiction after a dispensable, nondiverse party is dismissed pursuant to Rule 21 of the Federal Rules of Civil Procedure, creating complete diversity with respect to the remaining parties. See LeBlanc v. Cleveland, 248 F.3d 95 (2d Cir. 2001); Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826 (1989); cf. Guigliano v. Danbury Hosp., 396 F. Supp. 2d 220, 225 (D. Conn. 2005) (concluding that because plaintiff voluntarily dismissed her claims against the only nondiverse defendant, the remaining defendants' motions to dismiss for lack of diversity jurisdiction were moot). Because neither party has addressed the dispensability of Woods Oviatt, the Court makes no recommendation as to whether the district court should "exercise . . . [his] considerable discretion under Civil Rule 21 to dismiss the suit as against those nonessential nondiverse parties and continue to adjudicate the action with regard to the remaining parties." 13E Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. § 3605 (3d ed. April 2023).

Congress." Leroy v. Hume, No. 21 CV 2158, 2023 WL 2928353, at *4 (2d Cir. Apr. 13, 2023) (summary order) (quoting Gunn v. Minton, 568 U.S. 251, 258 (2013)); see also Tong v. Exxon Mobil Corp., 83 F.4th 122, 139–42 (2d Cir. 2023) (describing and applying the "Grable/Gunn exception"). Under the longstanding "well-pleaded complaint" rule, the basis for concluding that the claims invoke a federal question generally must appear on the face of the complaint. See Tong v. Exxon Mobil Corp., 83 F.4th at 132–33 (2d Cir. 2023).

Merely stating a claim arising under federal law or the Constitution, or that implicates a substantial federal question, does not automatically establish federal question jurisdiction. Rather, claims that are "not colorable"—meaning "immaterial" or "wholly insubstantial and frivolous"—do not confer subject matter jurisdiction under 28 U.S.C. § 1331, irrespective of whether they arise under federal law or raise a federal question. Gallego v. Northland Grp. Inc., 814 F.3d 123, 126 (2d Cir. 2016) (quoting Arbaugh v. Y & H Corp., 546 U.S. 500, 513 n.10 (2006)); see also Perpetual Sec., Inc. v. Tang, 290 F.3d at 137 (stating that "simply raising a federal issue in a complaint will not automatically confer federal question jurisdiction. Rather, we ask whether the cause of action alleged is so patently without merit as to justify the court's dismissal for want of jurisdiction" (quoting Duke Power Co. v. Carolina Env. Study Group, 438 U.S. 59, 70 (1978))).

Woods Oviatt seeks to take advantage of this point, arguing that even though plaintiffs have alleged violations of certain federal statutes, they have failed to plead any *colorable* federal claims and, therefore, the district court lacks federal question jurisdiction. (Firm's Mem. at 5–6). The Court thus turns to each of plaintiffs' federal causes of action and ultimately concludes that none of them are sufficiently colorable to confer jurisdiction under 28 U.S.C. § 1331.[13]

---

[13] The Court does not address here plaintiffs' fraud on the court claim, which neither arises under federal law nor implicates a federal issue.

a.    <u>Second Cause of Action</u>

Plaintiffs allege that defendants violated "FDCPA Rule 17(a)" because they initiated the State Court Action despite not being the "Real Party-in-Interest."  (Compl. ¶¶ 42–45).  The Court notes that there is some confusion as to whether plaintiffs meant to refer to Rule 17(a) of the Fair Debt Collection Practices Act (or "FDCPA")—which seemingly does not exist (<u>see</u> Firm's Mem. at 12)—or Rule 17(a) of the Federal Rules of Civil Procedure (or "FRCP").  (<u>Compare</u> Bank's Mem. at 6–8 (engaging in an FDCPA analysis, <u>with</u> Firm's Mem. at 7, 12 (addressing both FDCPA and FRCP issues), <u>and</u> Pls.' Obj. at 2 (referring to violations of "FRCP Rule 17")).  In either case, plaintiffs' Second Cause of Action is entirely frivolous.

The Federal Rules of Civil Procedure do not apply to the conduct of parties in a state court proceeding.  <u>See</u> Fed. R. Civ. P. 1 (stating that "[t]hese rules govern the procedure in all civil actions and proceedings in the United States district courts").  Moreover, the Federal Rules of Civil Procedure were put in place to govern civil actions; they do not create substantive rights, and plaintiffs "cannot rely on [said rules] as a basis for federal question jurisdiction."  <u>Selvaggio v. Hiatt</u>, No. 19 CV 3185, 2019 WL 2515618, at *4 n.3 (E.D.N.Y. June 18, 2019) (citing <u>Owen Equipment v. Kroger</u>, 437 U.S. 365, 370 (1978)).

As for the FDCPA, plaintiffs have never identified a single provision of that law which they allege defendants violated (<u>see</u> Firm's Mem. at 12), nor have they alleged or established that either defendant is a "debt collector" that engaged in collection activity as defined by the FDCPA (Bank's Mem. at 6–8).  <u>See generally</u> <u>Henson v. Santander Consumer USA Inc.</u>, 137 S. Ct. 1718 (2017).  Plaintiffs' Second Cause of Action thus does not confer federal jurisdiction under Section 1331.

b.      Third and Fifth Causes of Action

Counts Three and Five bring claims for constitutional violations under 42 U.S.C. §§ 1983, 1985, and 1986 (Compl. ¶¶ 47–49), and directly under the Fifth and Fourteenth Amendments to the United States Constitution (id. ¶¶ 55–58).  Setting aside any substantive flaws with those claims—of which there appear to be many—they all suffer from fatal pleading and procedural flaws.

"To state a claim for relief in an action brought under § 1983, [plaintiffs] must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law.  Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49–50 (1999) (quoting Blum v. Yaretsky, 457 U.S. 991, 1002 (1982)).  Similarly, a "Fifth Amendment Due Process claim . . . cannot lie against a private actor" absent a sufficient showing of governmental action.  Doe v. Livanta LLC, 489 F. Supp. 3d 11, 17 (E.D.N.Y. 2020) (quoting Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. at 50).

Plaintiffs lack "credible allegations of state action" to support their claims against either defendant under Section 1983, the Fifth Amendment, and the Fourteenth Amendment.  Cramer v. Englert, 93 Fed. Appx. 263 (2d Cir. 2004).  Although plaintiffs repeatedly assert that defendants acted under color of state law by taking concerted action to file the foreclosure action in state court (see Compl. ¶¶ 32, 34, 41, 46–47, 55), it is well established that the "mere invocation" of New York legal procedures does not satisfy the state actor requirement, Dahlberg v. Becker, 748 F.2d 85, 92–93 (2d Cir.1984), and plaintiffs have not identified any other conduct on the part of the defendants that could be reasonably construed as being under the color of state

14

law, see Jackson v. Metro. Edison Co., 419 U.S. 345, 351 (1974) (requiring "a sufficiently close nexus between the State and the challenged action").

Plaintiffs' claims under 42 U.S.C. § 1985 necessarily fail because they have not alleged the "specific times, facts or circumstances relating to the alleged conspiracy." Coakley v. 42nd Pct. Case 458, No. 08 CV 6206, 2009 WL 3095529, *4 (S.D.N.Y. Sept. 28, 2009). Moreover, plaintiffs failed to allege that any of the defendants' conduct was "motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus." Gusler v. City of Long Beach, 823 F. Supp. 2d 98, 136 (E.D.N.Y. 2011). Plaintiffs' claims under 42 U.S.C. § 1986 are also meritless; such claims require a valid claim under Section 1985. See id. at 137.

In light of the above, the Court concludes that plaintiffs' Third and Fifth Causes of Action do not suffice to confer federal jurisdiction under 28 U.S.C. § 1331.[14]

c.    Fourth Cause of Action

Finally, plaintiffs' Fourth Cause of Action alleges violations of 18 U.S.C. §§ 1337, 1341. (Compl. ¶¶ 50–54). These claims are not colorable. 18 U.S.C. § 1337 simply is not an existing statute. Assuming, as defendants do, that plaintiffs meant to cite 19 U.S.C. § 1337, it is plain that this statute—which "governs the import of goods governed by the United States International Trade Commission"—does not apply here. (Bank's Mem. at 9; see also Firm's Mem. at 13).

The other statute cited in plaintiffs' Fourth Cause of Action—18 U.S.C. § 1341—is a federal criminal statute concerning "[f]rauds and swindles." "The law in this circuit is clear that [18 U.S.C. § 1341] does not support any private right of action," meaning that individuals are not empowered to bring a claim for violation of the statute. Pharr v. Evergreen Garden, Inc., 123 F.

---

[14] For the same reason, 28 U.S.C § 1343(a) does not provide jurisdiction over plaintiffs' constitutional claims. (See Compl. ¶ 4).

App'x 420, 422 (2d Cir. 2005) (citing <u>Official Publications, Inc. v. Kable News Co.</u>, 884 F.2d 664, 667 (2d Cir.1989)).  Plaintiffs' Fourth Cause of Action thus does not provide a basis for exercising federal jurisdiction under 28 U.S.C. § 1331.

### 3.    Supplemental Jurisdiction

Plaintiffs also claim that the district court has supplemental jurisdiction under 28 U.S.C. § 1967(a).  (Compl. ¶ 8).[15]  When a federal district court has original jurisdiction over some claims in an action, the court may also exercise supplemental jurisdiction over all remaining claims so long as they "form part of the same case or controversy."  28 U.S.C. § 1367(a).  In deciding whether to exercise that jurisdiction, the central question is whether the two sets of claims "arise from a common nucleus of operative fact," such that a plaintiff would ordinarily be expected to try them all in a single proceeding.  <u>Shahriar v. Smith & Wollensky Rest. Grp., Inc.</u>, 659 F.3d 234, 245 (2d Cir. 2011).  The Court need not engage in that analysis here, however.  As noted above, the district court lacks original jurisdiction over any of plaintiffs' federal law claims and thus it necessarily lacks supplemental jurisdiction over plaintiffs' sole state law claim. <u>Nowak v. Ironworkers Loc. 6 Pension Fund</u>, 81 F.3d 1182, 1188 (2d Cir. 1996) (stating that "since a court must have original jurisdiction in order to exercise supplemental jurisdiction, a dismissal pursuant to Rule 12(b)(1) precludes a district court from exercising supplemental jurisdiction over related state claims").

### B.    Abstention[16]

Wells Fargo argues that plaintiffs' claims are barred by <u>Younger</u> abstention because the State Court Action implicates "important state interests in contractual and property rights," and

---

[15] Plaintiffs also cite the "Pendant Jurisdiction" doctrine as a basis for jurisdiction.  (<u>Id.</u> ¶ 6).  That doctrine has been supplanted by supplemental jurisdiction as provided by Section 1367.  <u>See</u> <u>Itar-Tass Russian News Agency v. Russian Kurier, Inc.</u>, 140 F.3d 442, 447 (2d Cir. 1998).

[16] <u>Younger</u> abstention is "not a jurisdictional bar based on Article III requirements, but instead a prudential limitation on the court's exercise of jurisdiction grounded in equitable considerations of comity."  <u>Kaufman v. Kaye</u>,

16

"[p]laintiffs have an open avenue to review in state court." (Bank's Mem. at 3). Under the abstention doctrine set forth in Younger, federal courts are "generally require[ed] . . . to abstain from taking jurisdiction over federal constitutional [or statutory] claims that involve or call into question ongoing state proceedings." Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002) (citing Younger v. Harris, 401 U.S. at 43–44); see also Fried v. CIT Bank, N.A., No. 22 CV 7376, 2023 WL 5020286, at *4 n.5 (E.D.N.Y. July 11, 2023) (confirming that Younger extends to claims asserting statutory rights).

At its inception, the Younger doctrine applied only in the context of injunctions seeking to halt state criminal proceedings. See 17B Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. § 4254 (3d ed. June 2023). Over time, however, the Supreme Court has extended Younger's reach to two civil contexts: "certain civil enforcement proceedings" and "civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." Falco v. Justices of the Matrim. Parts of Sup. Ct. of Suffolk Cnty., 805 F.3d 425, 427 (2d Cir. 2015) (quoting Sprint Comm'ns, Inc. v. Jacobs, 571 U.S. 69, 70 (2013)).

In assessing whether Younger abstention applies to a given case, courts may consider, inter alia, whether "the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional [or statutory] claims." Id. (quoting Spargo v. New York State Comm'n on Judicial Conduct, 351 F.3d at 77). However, that question "become[s] relevant only after applying the straightforward categorical approach required by

---

466 F.3d 83, 88 n.1 (2d Cir. 2006) (quoting Spargo v. New York State Comm'n on Judicial Conduct, 351 F.3d 65, 74 (2d Cir.2003), cert. denied, 541 U.S. 1085 (2004)). Nonetheless, courts in this district review motions to dismiss premised on Younger abstention under the same standard applicable to motions to dismiss for lack of subject matter jurisdiction. McDonald v. Esposito, 2021 WL 1062259, at *2 (citing United States v. Blake, 942 F. Supp. 2d 285, 292 (E.D.N.Y. 2013)).

Sprint." Toczek v. Alvord, 841 Fed. Appx. 263, 266 n.3 (2d Cir. 2021) (quoting Falco v. Justices of the Matrim. Parts of Sup. Ct. of Suffolk Cnty., 805 F.3d at 427); see also Cavanaugh v. Geballe, 28 F.4th 428, 432 (2d Cir. 2022). The Court thus begins its analysis by turning to the categories enunciated in Sprint Communications, Inc. v. Jacobs.

Plaintiffs' Complaint includes a demand for "[f]ree and clear Title to the [Premises], with a Court Ordered Mortgage Release from [the Bank]." (Compl. at p. 19). Plaintiffs also seek an order "Vacating, Setting Aside or Voiding . . . the judgment for foreclosure of [the Premises]" (id.), which the Court construes as a request for an order halting the State Court Action given that, to the Court's knowledge, no judgment for foreclosure has been entered. (See n.8 supra). The injunctive relief demanded by plaintiffs in this case plainly constitutes a request to enjoin a pending state foreclosure proceeding. See McDonald v. Esposito, 2021 WL 1062259, at *3 (treating "plaintiff's request for an order that her state-court foreclosure action be dismissed and expunged" as a request for an injunction against a state foreclosure proceeding for purposes of Younger abstention).

Since the Supreme Court decided Sprint, courts in this Circuit have routinely held that state "foreclosure action[s] qualif[y] as a civil proceeding that implicates a State's interest in enforcing the orders and judgments of its courts." Id. (citing cases); see also Fequiere v. Tribeca Lending, No. 14 CV 812, 2015 WL 1412580, at *7 (E.D.N.Y. July 15, 2014) (adopting report and recommendation and holding that "[t]o the extent plaintiff seeks federal court intervention in an ongoing state foreclosure proceeding, such claims are generally barred by Younger"). A straightforward application of Sprint to this case thus permits but one conclusion: that Younger abstention bars plaintiffs' claims for injunctive relief against the State Court Action.

The additional factors set out in <u>Spargo</u> and elsewhere only bolster this conclusion. Specifically, there is no impediment to plaintiffs raising the arguments made in this case in the State Court Action, including their constitutional claims (assuming such claims are not barred by *res judicata* or by plaintiffs' failure to answer in the State Court Action). See <u>Donohue v. Mangano</u>, 886 F. Supp. 2d 126, 142 (E.D.N.Y. 2012) (collecting cases). In the event that those arguments fail before the New York State Supreme Court, plaintiffs will also have an avenue to appeal within the state court system. Irrespective of whether plaintiffs prove successful in any of those endeavors, they surely constitute an adequate remedy under state law. Indeed, "<u>Younger</u> merely presupposes that the plaintiff *be able* to interpose his federal defense in the state court; it does not additionally require all procedures for the interposition of the federal defense to be as advantageous in the state court as in the federal action." <u>Spargo v. New York State Comm'n on Judicial Conduct</u>, 351 F.3d at 81 (emphasis added); <u>see also Kirschner v. Klemons</u>, 225 F.3d 227, 235 (2d Cir. 2000) (concluding that "the question whether the state's procedural remedies *could* provide the relief sought does not turn on whether the state *will* provide the relief sought by the plaintiff before the federal court" (emphasis added)).

Plaintiffs' claims for injunctive relief appear designed to circumvent the State Court Action and the remedies afforded to plaintiffs therein, and exercising jurisdiction over those claims would therefore "lead to the precise federal interference in state judicial proceedings that <u>Younger</u> was designed to prevent." <u>Kaufman v. Kaye</u>, 466 F.3d at 86. The Court thus concludes that <u>Younger</u> abstention further bars plaintiffs' claims insofar as they seek to enjoin or otherwise disturb the State Court Action.[17]

---

[17] Contrary to Wells Fargo's assertion, however, <u>Younger</u> alone does not mandate dismissal of this action in its entirety. In addition to the injunctive relief noted above, plaintiffs seek damages in connection with a supposed injury to their "property interests" as well as an award of "One Million Dollars for each constitutional deprivation of rights under Color of State Law." (Compl. at p. 20). It is well recognized that "abstention and

19

## OTHER BASES FOR DISMISSAL

In addition to the grounds for dismissal noted above—which provide an adequate basis for dismissing plaintiffs' claims against both defendants in their entirety—Wells Fargo also argues that plaintiffs' claims against the Bank should be dismissed pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure on the ground that the Bank was not properly served with process. (Bank's Mem. at 11). Errors within Wells Fargo's memorandum make it impossible for the Court to assess the validity of that argument.[18]

Finally, both defendants raise several claim-specific arguments in support of dismissing plaintiffs' Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (See Bank's Mem. at 4–10; Firm's Mem. at 7–14). Since the Court finds that dismissal is appropriate under Rule 12(b)(1), it need not reach the question of whether dismissal is also appropriate under Rule 12(b)(6). The Court notes, however, that the above analysis of plaintiffs' federal claims strongly suggests that plaintiffs' Second through Fifth Causes of Action should be dismissed for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). (See pp. 15–18 supra). In any event, the Court respectfully recommends that should the district court disagree with this Court's conclusions regarding jurisdiction and abstention, the Motion be referred back to the undersigned to address defendants' remaining arguments.

## CONCLUSION

In light of the above, the Court respectfully recommends that the district court dismiss plaintiffs' claims under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Any objections to

---

dismissal are inappropriate when damages are sought," and the Court's Younger analysis thus applies only to plaintiffs' claims for injunctive relief. Kirschner v. Klemons, 225 F.3d 227, 238 (2d Cir. 2000).

[18] Specifically, Wells Fargo's Memorandum misstates both the method of service used by plaintiffs and where service was effected. (Compare Bank's Mem. at 11, with ECF No. 9). Because neither party has addressed whether the actual means of service utilized by plaintiffs in this action were valid under the applicable state service laws or as a result of Wells Fargo's own authorization, the Court cannot make a recommendation with respect to dismissal on Rule 12(b)(5) grounds at this time.

this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order.  See, e.g., Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED.**

Dated: Brooklyn, New York
February 26, 2024

*Cheryl L. Pollak*
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York